IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

JOHN DIAMOND,

                              Plaintiff,

             Vs.                                         No. 10-3081-SAC

JAMES W. GRAY,

                              Defendant.


MEMORANDUM AND ORDER

             Incarcerated on a life sentence without parole at the United

States Disciplinary Barracks (USDB) at Ft. Leavenworth, Kansas, the plaintiff

John M. Diamond sues alleging his First Amendment rights were violated

when the Commandant of the USDB, James W. Gray, refused in February of

2010 to mail a letter that Diamond wrote to his wife.  The reason given

Diamond for not sending the letter was that it contained sexually explicit

material prohibited by USDB regulation.  After pursuing administrative

review concluding with the Commandant's final denial of his appeal, the

plaintiff filed this action.

             In ruling on the defendant Gray's first motion to dismiss or for

summary judgment, the court construed the *pro se* complaint to be a federal

prisoner's First Amendment claim against a federal prison official from whom

the prisoner was seeking permanent injunctive relief pursuant to either 28

U.S.C. §§ 1331 or 1361.  (Dk. 20, p. 2 n.2).  In that order, court addressed

several motions, allowing the plaintiff to supplement his complaint with the relevant administrative filings on the censorship of this letter, denying the plaintiff's motion for a preliminary injunction, and denying the defendant's motion for summary judgment.  (Dk. 20).  Following that order, the defendant filed a second motion for summary judgment (Dk. 21), and the plaintiff has filed his motion for summary judgment (Dk. 23), and a motion to add evidence (Dk. 26).  Based on the uncontested facts presented in the parties' cross motions for summary judgment and on the conclusions reached below, the court determines that as a matter of law the USDB policy and procedures in question are constitutional and were applied here without violating the plaintiff's First Amendment rights.

## SUMMARY JUDGMENT STANDARD

Rule 56 authorizes judgment without trial "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Substantive law governs the elements of a given claim or defense and reveals what issues are to be determined and what facts are material.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is one which would affect the outcome of the claim or defense under the governing law.  *Id*.  An issue is "genuine" if the evidence permits a reasonable jury to return a verdict for the nonmoving party.  *Id*.

2

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992). Instead of disproving a claim or defense, the movant need only show "a lack of evidence" on an essential element. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence from which a rational fact finder could find in the non-movant's favor. *Id.* The non-movant's "burden to respond arises only if the" movant meets its initial burden of production. *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005) (citation omitted). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. at 251–52.

The filing of cross-motions for summary judgment does not change the applicable standards, but a court is "entitled to assume that no evidence needs to be considered other than that filed by the parties." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Both sides are charged with showing no genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* As with any summary judgment motion, disputes over material facts result in the denial

3

of a motion.  *Id*.

A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drawn by attorneys.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant."  *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  The court is not to "construct arguments or theories for the plaintiff in the absence of any discussion of those issues."  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  Nor does the plaintiff's pro se status excuse him from the burden of coming forward with some "specific factual support," other than conclusory allegations, to support his claims.  *Douglass v. General Motors Corp.*, 368 F. Supp. 2d 1220, 1228 (D. Kan. 2005) (citation omitted), *aff'd*, 188 Fed. Appx. 656 (10th Cir.), *cert. denied*, 549 U.S. 1080 (2006) .

That the plaintiff is pro se also does not exempt him from complying with the essential rules of procedure, including the court's local rules.  *Calia v. Werholtz*, 426 F. Supp. 2d 1210, 1214 (D. Kan. 2006).  The plaintiff's motion for summary judgment does not "begin with a [nor include any] section that contains a concise statement of material facts" in violation of D. Kan. Rule 56.1(a).  Without this statement of fact, the plaintiff's motion shall be denied.  *Creamer v. Ellis County Sheriff Dept.*, 2009 WL 1870872 at *4 (D. Kan. 2009).  In his opposing memorandum to the defendant's

4

summary judgment motion, the plaintiff includes a section entitled

"Statement of Facts" but there are no facts stated there, no numbered

paragraphs of disputed facts, no references to the record, and no specific

references to the movant's facts.  His opposing memorandum fails to comply

with the basic terms of D. Kan. Rule 56.1(b).  "All material facts set forth in

the statement of the movant will be deemed admitted for the purpose of

summary judgment unless specifically controverted by the statement of the

opposing party."  D. Kan. Rule 56.1(a); *see Vasquez v. Ybarra*, 150 F. Supp.

2d 1157, 1160 (D. Kan. 2001).  Because the plaintiff's response makes no

effort to comply with this rule that is "designed to promote fairness and

reliability," the defendant's statement of facts is "deemed admitted."  *See*

*Elrod v. Walker*, 2011 WL 6372881 at *2 (D. Kan. 2011).[1]

---

[1]To his summary judgment motion (Dk. 23) and to his response to the defendant's summary judgment motion (Dk. 25), the plaintiff attaches a blanket declaration under penalty of perjury "that all the information contained therein [pleading] is true and correct."  In doing so, the plaintiff apparently hopes to transform all of his conclusory allegations and denials into Rule 56(e) material.  The purpose of Rule 56 "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("conclusory and self-serving affidavits are not sufficient").  For example, the plaintiff broadly alleges that the defendant's evidence on the contents of his letter is false and generally denies that the letter contained references to sexual violence.  Because the letter is not part of the record and appears to have been destroyed at the plaintiff's direction, (Dk. 20, p. 9), the plaintiff's allegations and denials only represent his bare and unexplained opinion that his written sexual fantasies did not meet his definition of sexual violence.  For this reason, such blanket declarations attached to summary judgment pleadings can frustrate a court's reasonable enforcement of Fed. R. Civ. P. 56(c)(4).

**FACTUAL and PROCEDURAL BACKGROUND**

After fairly and properly applying the governing procedural rules, the court finds the following facts to be uncontroverted.

On February 5, 2010, the plaintiff gave to USDB officials a non-legal letter that he had addressed to his wife but that he knew would be screened before mailing. The Chief of Inmate Services Branch ("ISB"), Mrs. Karen Pruitt, who has held this position for the past ten years, carried out her responsibility of screening this outgoing letter. Mrs. Pruitt processes inmate mail once per business day pursuant to USDB Regulation 28-1, "Mail Screening Policy and Procedures."[2] She initially screens mail for compliance with USDB Reg. 28-1 and the compliant mail is put into the United States Postal Service for delivery.

The rejection of mail for delivery is the exception rather than the standard practice. The ISB notifies the inmate of the rejection decision and the reason for it. The form notice also identifies the regulatory standard violated and informs the inmate of the right to file an appeal. The inmate is

_____

Moreover, such declarations are not a proper substitute for a movant's concise statement of material facts or for a non-movant's statement specifically controverting a proposed fact.

[2]In screening the plaintiff's letter, Mrs. Pruitt applied the 2009 version of USDB Reg. 28-1. The defendant has notified the court that this regulation was amended twice in 2011 and now appears as Military Correctional Complex (MCC) Regulation 28-1 under the title of "Rejected Inmate Mail." Consistent with the defendant's representation, there does not appear to be any change to the regulation's substantive standards at issue here.

not required to destroy the letter and may have it returned to him with the option of blacking out the objectionable items or rewriting the letter.  Any appeal by the inmate is reviewed by the Publications Advisory Board ("PAB") who provides the Commandant with a recommendation on the appeal.  If the Commandant denies the appeal, a written memorandum of rejection specifying the grounds for denial is presented to the inmate.  The Commandant's decision is the final step in a prisoner's available administrative remedies under USDB Reg. 28-1. The terms of USDB Reg. 28-1 relevant to this case include the following:

> a.  Inmate mail will not be rejected solely because its content is religious, philosophical, political, social, or sexual or because its content is unpopular, irreverent, or repugnant.
>  . . . .
> c.  Rejection of inmate mail, either incoming or outgoing, on the basis of content, is authorized only when it is determined to be detrimental to the safety, security, and good order or discipline of the USDB or might otherwise interfere with the correctional, rehabilitative, or treatment mission of the USDB.  (ACA 4-4491)  Such mail includes, but is not limited to, the following:
>> (1)  Contains sexually explicit material involving obscenity or a violation of a sex-based crime included in the Uniform Code of Military Justice (UCMJ).  Obscenity is defined as material that, taken as a whole under contemporary community standards, appeals to an unwholesome, immoderate or wanton interest in sex, is offensive because it depicts sexual conduct in a patently offensive way and, taken as a whole, lacks serious literary, artistic, political, or scientific value.  Obscenity under this regulation includes actual or simulated acts of bondage, homosexual acts, masturbation, and penetration of bodily orifices, both digitally and with an object.  Violation of sex-based crimes under the UCMJ include sodomy (both anal and oral) and indecent acts or assault.  These examples do not limit the discretion of the Commandant in determining specific materials are obscene as defined above; . . . .

(Dk. 22-2, p. 12).

Based on her initial screening of the plaintiff's letter of February 5, 2010, and on her "years of experience in the ISB in reviewing mail for prohibited content," Mrs. Karen Pruitt determined "that the letter contained sexually explicit content within the definition of obscenity . . . in USDB Reg. 28-1, para. 8-1(c)(1)."  (Dk. 22-2, p. 2, ¶ 4).  A copy of this letter is not part of the record, and Mrs. Pruitt does not aver that she possesses a copy or has access to one.  Her affidavit states "recall[ing] that it [the letter] contained references to sexual violence such as rape, slapping, pulling hair, bondage, and sadomasochism."  *Id*.

There is no question that the contents of the plaintiff's letter are material to these proceedings and that the actual letter is not a part of the record.  As supported by his declaration under penalty of perjury, the plaintiff alleged in his complaint that he received the "letter back" from Mrs. Pruitt with a form stating the letter contained "sexually explicit content" in violation of the USDB.  (Dk. 1, p. 7).  In its prior order, the court found that the plaintiff had said the letter "was destroyed" and that the attached exhibits indicated the letter would have been destroyed at the plaintiff's direction. (Dk. 20, p. 9).  Mrs. Pruitt most recently avers that the plaintiff "chose to send the objectionable letter to his attorney" as privileged mail.  (Dk. 22-2, ¶ 9).  The plaintiff inexplicably argues it was the defendant's responsibility to make and retain a copy of his letter for use in this

8

proceeding.  The plaintiff points to nothing in the administrative regulations or procedures that imposed the burden on the defendant to preserve a copy of the plaintiff's letter.  As the party bringing this claim, the burden of proving the contents of the subject letter falls squarely on the plaintiff's shoulders.[3]

What Mrs. Pruitt avers to be the content of the letter is her recollection from having screened it.  Her averments include, in particular, her characterization of the letter as having references to sexually violent acts.  The court reiterates first that the plaintiff has failed to follow the court's plain rules for controverting the defendant's statement of facts that include Mrs. Pruitt's recollection and characterization of the letter.  Thus, the defendant's statement of fact is deemed admitted.  In none of his summary judgment filings has the plaintiff specifically attempted to recount the actual contents of the letter that he wrote, that is not in the record, and that was last under his control.  These circumstances disincline the court from generously reading the conclusory arguments and denials in the plaintiff's summary judgment filings as creating material issues of fact simply because he chose to attach blanket declarations under penalty of perjury.

For the sake of argument, the court also will take a closer look at

---

[3]"The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted).

the plaintiff's summary judgment filings.  Just as he did in the prior proceedings, (Dk. 20, p. 8), the plaintiff relies on general and conclusory denials of Ms. Pruitt's characterization of his letter as containing references to sexual violence.[4]  Here are some examples.  "The plaintiff's letter to his wife

. . .  does not contain anything about rape, bondage and other prohibited acts by the UCMJ."  (Dk. 23, p. 8).  His letter "did not contain any communication concerning escape plans, . . ., rape, torture or bondage."  (Dk. 23, p. 11).  "The Defendant is still falsely contending the letter contained sexually explicit violence."  (Dk. 23, p. 14).  Besides denying that his letter contains "[r]eferences to sexual violence and rape" and contending this has yet to be proved, the plaintiff volunteers to "take a polygraph" for

---

[4]In that order, the court found:
> "The court first finds plaintiff identifies little to no factual support to create a genuine issue of fact as to whether the February 2010 letter rejected pursuant to USDB 28-1 contained material subject to restriction under that regulation.  The letter itself is not part of the record. . . .  Plaintiff's bare statement that Pruitt's characterization of the letter was a lie is insufficient.  Fed. R. Civ. P. 56(c)(1).  *See Celotex*, 477 U.S. at 324 (nonmoving party may not rest solely on allegations in the pleadings, but instead must designate 'specific facts showing that there is a genuine issue for trial').  Likewise, plaintiff's reference to purported similar correspondence that was neither reviewed nor rejected under USDB 28-1 as implemented in April 2009, and to the affidavit statement by his wife that their correspondence has historically encompassed only non-derogatory sexual fantasies, offers no counter evidence to Pruitt's determination that the content of the letter rejected in February 2010 included material proscribed for mailing by USDB 28-1, Paragraph 8-1(c)."

(Dk. 20, pp. 8-9).

the court.[5]  (Dk. 25, p. 2).  In short, the plaintiff generally denies that his

letter contained references to "sexually explicit violence," in particular "rape,

torture or bondage."

> At the same time, the plaintiff candidly admits:
>
> > The Plaintiff's descriptive letter of fondling his wife's body or
> > putting her in different positions may be unflattering to the scanner of
> > his correspondence and may be considered immoral by some but it is
> > no justification for rejecting the correspondence to and from his wife.
> > And since the Plaintiff knows that the institution has a policy
> > concerning correspondence containing rape and bondage he has
> > instructed his wife to avoid such language in her correspondence as he
> > does as well--but even if the Plaintiff contained such language in his
> > correspondence to his wife he has not violated any institutional rules
> > nor does it pose a threat to institutional security because it is a fantasy
> > letter (sexual) leaving the facility of which his wife has a right to
> > receive and she a consenting adult understands that it is fantasy about
> > her from the man she loves which strengthens their bond.

(Dk. 23, pp. 6-7).  The plaintiff also acknowledges that the "letter contained

sexually explicit language."  (Dk. 23, p. 11).  The plaintiff essentially admits

to sexually explicit content that someone scanning could be disturbed by and

could regard as immoral.

> At best, the plaintiff's summary judgment filings offer only his

recollection and characterization that the contents of his letter did not include

references to explicit sexual violence such as rape, torture or bondage.  He

does not attempt to recall the actual wording or contents of the letter.  Even

---

[5]This conclusory declaration and offer fails to provide the information
required for relief under Rule 56(d).  *Abdulhaseeb v. Calbone*, 600 F.3d
1301, 1310 (10th Cir.), *cert. denied*, 131 S. Ct. 469 (2010).

presuming his filings met the procedural requirements of Rule 56 and the court's local rules, they do not effectively controvert Mrs. Pruitt's recollection and characterization that "the letter contained sexually explicit content within the definition of obscenity." (Dk. 22-2, p. 2, ¶ 4). Thus, even indulging the plaintiff's blanket declarations under penalty of perjury, the court is not convinced that they create a genuine issue of material fact over whether the plaintiff's letter contained material meeting the definition of obscenity found in USDB Reg. 28-1, ¶ 8-1(c)(1).

Upon determining that the plaintiff's letter violated USDB Reg. 28-1, Mrs. Pruitt completed a form notice that was served on the plaintiff. The form stated that the letter was returned for a violation of USDB Reg. 28-1, "sexually explicit" content. (Dk. 5-1, p. 3). The reverse side of this notice specified the available appeal procedures. *Id.* at 4. On February 8, 2010, the plaintiff then sent an inmate request slip to the deputy commandant alleging his letter was wrongly rejected in violation of his constitutional rights. (Dk. 5-1, p. 11). The deputy commandant promptly responded that the correct procedures were followed in the mail room and suggested that the plaintiff appeal to the PAB. *Id.* Also on February 8, 2010, the plaintiff sent a request slip to the USDB Judge Advocate asserting Mrs. Pruitt's rejection was a constitutional violation and asking for an investigation. The Judge Advocate's office responded promptly:

It is not a matter of whether she disagrees with it. It is a matter of

12

> whether inmate correspondence, incoming or outgoing, contains
> material that violates USDB 28-1.  If rejected, you have the right to
> appeal to the Commandant.  We attempt to be consistent in application
> of the standards contained in USDB 28-1.  I have seen no evidence that
> Mrs. Pruitt is interjecting her personal biases into the process.  If you
> appeal a rejection, it is reviewed by the publication advisory board
> (PAB) and a decision is made by the Commandant.

(Dk. 5-1, p. 5).

The plaintiff appealed to the PAB on February 11, 2010.  The plaintiff argued in his inmate request slip that his outgoing letter to his wife did not involve any institutional interest and did not interfere with his treatment as he is not a sex offender.  (Dk. 5-1, p. 6).  On February 23, 2010, the deputy commandant responded that the PAB had reviewed the plaintiff's letter and found its content prohibited under USDB 28-1, ¶ 8-1(c)(1).  *Id.*  After reviewing the plaintiff's appeal, Commandant Gray denied it.  (Dk. 5-1, p. 9).

Plaintiff filed the instant action seeking injunctive relief.  In its prior order, the court construed the plaintiff's complaint as follows:

> Plaintiff does not contest that he received all procedural
> safeguards provided in USDB 28-1, including notice of his mail being
> rejected and administrative review of that action before the PAB and
> Commandant, and does not claim the procedural safeguards provided
> are constitutionally deficient.  Nor does plaintiff directly challenge the
> facial validity of the restrictions imposed by USDB 28-1, and appears to
> acknowledge such restrictions--if properly applied--address appropriate
> institutional concerns justifying limited interference in plaintiff being
> able to send mail out of the facility.
> Instead, plaintiff's complaint is directed at the constitutional
> legitimacy of USDB 28-1 as applied to his February 5, 2010, personal
> letter to his wife, a letter plaintiff contends implicated no legitimate
> correctional, rehabilitative, or security concerns.

13

(Dk. 20, pp. 6-7).  The plaintiff has not filed a motion to amend his complaint or a motion for the court to reconsider or modify its construction of his complaint.  Thus, the court addresses the pending summary judgment motions on the plaintiff's claim that USDB Reg 28-1 as applied to his February 2010 letter, violated his First Amendment rights.

**RELEVANT LAW AND ANALYSIS**

"The Supreme Court has made it clear that prison inmates retain all First Amendment rights not incompatible with their status as prisoners, ' or with the legitimate penological objectives of the corrections system.'" *Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009) (quoting *Pell v. Procunier*, 417 U.S. 817, 832 (1974)).  On the other hand, federal courts typically "have adopted a broad hands-off attitude toward problems of prison administration" that springs from the substantial hurdles facing prison administrators in carrying out their duties of "maintaining internal order and discipline, . . . securing their institutions against unauthorized access or escape, and . . . [of] rehabilitating."  *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974).  So, "prisoners' rights may be restricted in ways that 'would raise grave First Amendment concerns outside the prison context.'"  *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010)  (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  It is enough that prison officials "reasonably exercised their judgment as to the appropriate means of furthering penological goals," for the courts "must accord substantial deference to the professional judgment of

14

prison administrators, who bear a significant responsibility for defining legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzeta*, 539 U.S. 126, 132 (2003) (citing in part *Pell v. Procunier*, 417 U.S. at 926-27).

"A prisoner has a constitutional right to have his outgoing mail processed for delivery, absent legitimate penological interests to the contrary." *Gee*, 627 F.3d at 1188 (citing *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996)). Acknowledging that "[t]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials," 490 U.S. at 413, the Supreme Court in *Thornburgh* upheld the *Martinez* standard for outgoing mail. *Treff*, 74 F.3d at 194-95. This standard justifies limiting outgoing mail if:

> First, regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. . . . Rather, they must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad. This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty.

*Procunier v. Martinez*, 416 U.S. at 413-14. Thus, if "prison officials censor

simply by indulging their personal prejudices and opinions, while purporting to apply constitutional standards," the courts have found this an unconstitutional practice. *Jones v. Caruso*, 569 F.3d at 267 (internal quotation marks and citations omitted).

Of course, there can be no argument that "obscene material is unprotected by the First Amendment." *Miller v. California*, 413 U.S. 15, 23 (1973). Another way of saying this is that obscene speech is one of those "areas of speech [that] can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)--not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content." *R. A. V. v. St. Paul*, 505 U.S. 377, 383-84 (1992). The definition of obscene material from *Miller v. California* is "that the work, taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 246 (2002). This standard is similarly stated in the USDB 28-1 as the definition of obscenity. (Dk. 22-2, p. 12).

The defendant has shown that the plaintiff's letter was screened and viewed by prison officials in accordance with a procedure the plaintiff knew would require others, beside his wife, to read his letter. *See Clark v. Carter*, 2006 WL 3448689 at *6 (W.D. Wash. Nov. 27, 2006). Mrs. Pruitt has

16

averred "that the letter contained sexually explicit content within the definition of obscenity as defined in USDB Reg. 28-1, para. 8-1(c)(1)."  The plaintiff has not presented the letter for the court to review and has not carried his burden of controverting Mrs. Pruitt's statement and finding. Instead, the plaintiff admits his "outgoing letter contained sexually explicit language" (Dk. 23, p. 11) to the point of conceding that his "descriptive letter of fondling his wife's body or putting her in different positions may be unflattering to the scanner of his correspondence and may be considered immoral by some" (Dk. 23, p. 6).  On the record, as it stands, the plaintiff has not controverted that the letter meets the definition of obscene speech making the additional First Amendment analysis under *Martinez* unnecessary. *See Clark v. Carter*, 2006 WL 3448689 at *6-*7;[6] *see* Defendant's Memorandum ("Plaintiff's challenge does not demonstrate a violation of plaintiff's First Amendment rights, . . ." Dk. 22, p. 14).  Thus, the court grants the defendant's motion as the uncontroverted facts establish as a matter of law that the plaintiff cannot prove the violation of a First Amendment right.

---

[6] "Inmates have no right to receive materials that constitute obscenity. *Miller v. California*, 413 U.S. 15, 23, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973) ('[O]bscene material is unprotected under the First Amendment.'). However, materials that constitute indecent sexual expression not rising to the level of obscenity are constitutionally protected.  *Reno v. American Civil Liberties Union*, 521 U.S. 844, 874-75, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997)."  *Ramirez v. Pugh*, 379 F.3d 122, 129 (3d Cir. 2004).

17

The court alternatively addresses the defendant's censorship of the plaintiff's letter under *Martinez*. By the terms of USDB Reg. 28-1, censorship "is authorized only when it is determined to be detrimental to the safety, security, and good order of discipline of the USDB or might otherwise interfere with the correctional, rehabilitative, or treatment mission of the USDB." (Dk. 22-2, p. 12). As argued and demonstrated by the defendant, the USDB Reg. 28-1 is a policy implemented consistently with Army Regulation 190-47, *The Army Corrections System* § 10-10.b (15 June 2006). It provides in relevant part for censorship of mail meeting certain criteria that include the *Miller* standard for obscenity. Thus, by force of the USDB's institutional policy and the Department of Army's regulation, the defendant has established its position that the mailing of obscene material is "detrimental to the safety, security, and good order" of the correctional institution and its mission. As the court acknowledged in its prior order, "[t]hese are substantial government interests sufficient to satisfy the first part of the *Martinez* standard." (Dk. 20, p. 11).

Additionally, the defendant points to Mrs. Pruitt's averments that "references to sexual violence such as rape, slapping, pulling hair, bondage, and sadomasochism" were contained in the plaintiff's letter.[7] The defendant

---

[7]This is one of the defendant's statement of facts "deemed admitted" because of the plaintiff's failure to comply with the plain terms of D. Kan. Rule 56.1.

18

argues that allowing an inmate to perpetuate violent and criminal thoughts through outgoing mail "causes a security risk for prison guards and undermines the correctional and rehabilitative goals of the facility." (Dk. 22, p. 11). "Permitting an inmate, such as plaintiff, to fabricate, assert, and communicate violent fantasies to the public would in turn also allow the inmate to feed off those fantasies thereby negatively affecting the rehabilitation of plaintiff, increasing the risk to guards and inmates." *Id*. The government remarks that while the plaintiff's wife may have been the intended audience for his letter, there still remains valid institutional concerns over the expression of violence or obscenity itself. Moreover, the expression here was not confined to the plaintiff's wife, as the outgoing letter was subject to staff screening. Without the deterrent of censorship, an inmate could direct obscene letters to female prison staff screeners in order to harass them. Prevention of staff harassment is a common ground for censoring sexually explicit material. *See* 2 Michael B. Mushlin, *Rights of Prisoners* § 6.12 (2012); *see, e.g.*, *Sperry v. Werholtz*, 413 Fed. Appx. 31, 40-41 (10th Cir. Feb. 14, 2011); *Mashaney v. Call*, 2010 WL 5463879 at *5 (D. Kan. Dec. 29, 2010). Other than reiterating that his wife was the only intended audience,[8] the plaintiff does not respond to any of these adduced institutional

---

[8]The plaintiff makes much of the fact that his letter was written only to his wife, but outgoing mail is screened by prison officials "who did not solicit or wish to view information" of an obscene nature. *See Clark v. Carter*, 2006 WL 3448689 at *6 (W.D. Wash. Nov. 27, 2006). That the plaintiff is

interests as to create a genuine issue of material fact.

As for the second prong of the *Martinez* standard, the court determines whether the challenged regulation is "'generally necessary' to a legitimate governmental interest." *Thornburgh*, 490 U.S. at 411 (quoting *Martinez*, 416 U.S. at 414). The enforcement of the regulation here resulted in censoring a single letter that contained obscenity. The inmate has the option of blacking out the objectionable items, rewriting the letter, or destroying it. In this case, the plaintiff apparently mailed it to his lawyer as privileged mail. This regulation does not impose other sanctions or otherwise limit the inmate's ability to mail letters to his wife or anyone else that do not contain obscenity. The regulation certainly permits the plaintiff to write letters about sex and sexual desires so long as they do not contain material meeting the definition of obscenity. The regulation and its enforcement here plainly are not greater than necessary to serve the defendant's substantial interests in preserving the safety of inmates and security of the facility, in protecting staff from harassment, and in furthering the rehabilitation of inmates. Concluding that USDB Reg. 28-1 and the defendant's enforcement of it in this instance did not violate the plaintiff's constitutional rights, the court also grants the defendant's motion for summary judgment on this alternative ground.

---

an inmate without conjugal visits does not entitle him to engage in obscene speech protected from any regulation.

## MOTION TO ADD EVIDENCE

After the parties' dispositive motions were ripe, the plaintiff then filed this motion seeking to include in the record an incoming letter dated October 11, 2011, that his wife sent and that was rejected as containing sexually explicit material.  The plaintiff also wants to add the Commandant's decision denying his appeal of this rejected letter.  The plaintiff's motion states that he does not intend to change the nature of his case but seeks only to add these documents as evidence.  Because the later incoming mail and the Commandant's decision involving it are not relevant to the plaintiff's claim as pled, discussed and decided above, the court denies the motion.  They are not relevant in proving the contents of the letter of February of 2010 or in controverting the defendant's statement of fact.  The court will not act as an advocate for the plaintiff and plead a claim for him based on new evidence of incoming mail censored more than 18 months after the outgoing mail in question was censored.

IT IS THEREFORE ORDERED that the defendant's second motion for summary judgment (Dk. 21) is granted;

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment (Dk. 23) is denied; and

IT IS FURTHER ORDERED that the plaintiff's motion to add evidence (Dk. 26) is denied.

21

Dated this 24th day of April of 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge